(No. 53573.—

*In re* ROBERT J. McDONNELL, Attorney, Petitioner.

*Opinion filed November 18, 1980.*

Disciplinary proceeding.

John C. O'Malley, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Martin and Robert A. Merrick, Jr., of Chicago, for petitioner.

MR. JUSTICE MORAN delivered the opinion of the court:

On March 26, 1969, this court allowed the motion of petitioner, Robert J. McDonnell, to strike his name from the roll of attorneys. This action followed his convictions in 1966 for conspiracy to transport stolen securities in interstate commerce and in 1967 for failure to file income tax returns for the years 1960 through 1964 inclusive. In 1972 petitioner filed, pursuant to Supreme Court Rule 767 (73 Ill. 2d R. 767), his first motion for reinstatement, which was denied. On June 26, 1978, petitioner filed the present petition for reinstatement. A panel for the Hearing Board of the Attorney Registration and Disciplinary Com-

mission recommended that the petition for reinstatement be allowed. The Administrator filed exceptions, and the Review Board remanded the cause to the panel to adduce additional evidence on rehabilitation. The panel affirmed its recommendation that the petitioner be reinstated. A majority of the Review Board recommended that the petition for reinstatement be denied.

At the first hearing before the panel, held on March 15, 1979, petitioner testified that, during the period in which the offenses were committed, he was a criminal lawyer trying cases which attracted considerable public attention. Petitioner admitted that he was not mature at the time and had "a lot of free time." Consequently, he fell into "the death trap that many lawyers fall in" of going "out drinking" or "to the races" instead of returning to his office. He developed a serious drinking problem. He failed to keep accurate accounts and records of his business, which finally led to his failure to file income tax returns.

Although petitioner acknowledged his conviction for conspiracy, he stated that he had not been guilty of the offense. Rather, he stated he was guilty of "bad judgment and association." The conviction stemmed from petitioner's meeting with several clients who were involved with stolen money orders valued at $10,000.

Petitioner testified that, following his release from Federal custody in 1970, he was involved in establishing a medical center on the south side of Chicago. In 1971, the S. A. Healy Company, a firm founded by his uncle and operated by his family, employed him at a yearly salary of approximately $9,000. He stated that he was not proud of the fact that this position was a "sinecure." Petitioner received a number of interest-free loans from the S. A. Healy Company, amounting to $100,000. He explained that these loans were an advance on a $177,000 inheritance from a deceased uncle whose estate was pending in

probate court. These loans were used by petitioner to invest in various projects, including pure-water development, a used-car lot, and an export company. From 1970 through 1974 petitioner had made monthly payments of $100 to the U.S. Internal Revenue Service to repay his tax liability. He explained that he had discontinued these payments on the advice of his attorney, pending resolution of an objection to tax liens which would be resolved "in the very near future."

The petitioner had been hospitalized for treatment of an overdose of drugs for four days in January of 1977. He explained that this was a period of temporary severe depression, brought on by drinking, in which he attempted suicide. He stated, "I would say I slipped, that is all." He commented, "I take a drink occasionally."

Petitioner stated that he has kept abreast of legal developments by his contacts with other attorneys and judges and by reading legal advance sheets regularly. He recognizes his past mistakes, feels he has now matured, and believes he has overcome his drinking problem. If reinstated, petitioner would accept a position with a firm which would not involve the collection of money or the accounting of money, areas which had caused him problems in the past. He also pledged to devote 25% of his time to the representation of indigents.

A written report from Dr. John R. Adams was admitted into evidence. Dr. Adams stated that the briefness of petitioner's January 1977 hospitalization was a sign of his strength. He also stated his belief that petitioner had overcome his drinking problem, as shown by his continued involvement with Alcoholics Anonymous. Dr. Adams attested to petitioner's competency to resume his former responsbilities.

Sam Adam, an attorney, testified that he had known him since 1962 and that he regularly discussed recent developments in law with him. In his opinion, the peti-

tioner's reputation for honesty and integrity is impeccable. Adam also stated that he would ask the petitioner to become affiliated with his firm if he were to be reinstated.

James Doherty, public defender of Cook County, also testified as a character witness. He stated that he had been acquainted with petitioner since 1945 and had always considered him to have been a good lawyer. He would have no hesitancy in recommending that petitioner be hired by his office. Doherty stated that petitioner had never betrayed the trust of a client and never would. He testified that petitioner's reputation for honesty and integrity was good.

The panel, in recommending that the petition for reinstatement be granted, made the following comment in its report:

> "[T]here remains a lingering doubt regarding his emotional stablility and his having overcome the drinking problem which occurred at the same time that his difficulty with the Federal government arose."

In light of the express reservation of the panel, the Review Board remanded the cause to adduce further evidence on the issue of rehabilitation.

A second hearing was scheduled before the panel on January 22, 1980. Dr. John R. Adams testified that plaintiff's statement that he took an occasional drink was not inconsistent with Dr. Adams' earlier report in which he stated his belief that petitioner's drinking problem was under control. It was also his opinion that petitioner is rehabilitated from both a psychiatric and medical standpoint.

Petitioner testified as to three traffic citations issued on January 20, 1978, which were listed in his amended petition. He admitted that he had been charged with driving while intoxicated. However, the charges were dismissed shortly after his arrest when his dinner com-

panions and the manager of the restaurant where he had dined testified that he had not taken an alcoholic drink that evening.

The panel again recommended that petitioner be reinstated. However, the Review Board's report recommended that the petition for reinstatement be denied.

In a petition for reinstatement to the roll of attorneys, the petitioner has the burden of introducing evidence of his rehabilitation. (*In re Nesselson* (1979), 76 Ill. 2d 135, 138; *In re Starr* (1976), 64 Ill. 2d 407, 415; *In re Thomas* (1979), 76 Ill. 2d 185, 189.) "Rehabilitation, the most important consideration in reinstatement proceedings, is a matter of one's 'return' to a beneficial, constructive and trustworthy role." (*In re Wigoda* (1979), 77 Ill. 2d 154, 159.) Such must be established by clear and convincing evidence. *In re Wigoda* (1979), 77 Ill. 2d 154, 158; *In re Starr* (1976), 64 Ill. 2d 407, 415.

The Review Board, in its report, expressed doubt over the petitioner's assertion that his drinking problem is now resolved. This same concern prompted the Review Board to remand the cause to the panel for additional evidence on the subject. On remand, Dr. Adams testified that petitioner has resolved his alcoholism and that his testimony that he takes an occasional drink is not inconsistent with his particular type of alcohol problem. Additionally, it has been shown by the testimony of both the petitioner and Dr. Adams that petitioner regularly attends meetings of Alcoholics Anonymous.

The Review Board also criticized petitioner's assertion that, if reinstated, he would return to the field of criminal law. The Review Board remarked, "He will not be removing himself from the same circumstances and temptations that got him involved with criminal conspiracy in the first instance." However, petitioner stated that his position with Sam Adam would be one in which he would not

handle money or be involved with bookkeeping, the areas which he admitted caused him problems. He would also be paid on a straight salary basis. Moreover, petitioner expressed his intention to devote 25% of his time to the representation of indigents. We do not think it is reasonable to expect a former criminal attorney to ignore his considerable experience and knowledge in his specialty to delve into another area of law in order to qualify for reinstatement.

The Review Board also criticized plaintiff's failure to pay his tax liabilities with the government. The petitioner testified that he had made payments of $100 per month from 1970 through 1974 to the government to repay his tax debt. In 1974, plaintiff's attorney advised him to stop such payments until objections filed in his behalf could be resolved. The petitioner cites *In re Thomas* (1979), 76 Ill. 2d 185, for the proposition that restitution is not essential to the granting of reinstatement. In that case, the petitioner had been indicted and charged with using the mails to defraud several insurance companies. The charges stemmed from petitioner's practice of purchasing personal injury cases from solicitors. The Review Board recommended that the petition for reinstatement be denied because petitioner had failed to make restitution to the clients defrauded. The petitioner stated that more than 10 years had elapsed since he had dealt with the clients to whom the Review Board would require him to make restitution. He stated that he no longer had files or any other means to contact these people and, thus, restitution was impossible. The court stated:

"Although whether restitution has been made is relevant in determining whether a disbarred attorney has been rehabilitated, it is not the controlling consideration. *** Under these circumstances petitioner's failure to show an effort to

make restitution does not serve to preclude his being reinstated." *In re Thomas* (1979), 76 Ill. 2d 185, 191.

In the present case, the petitioner stated that the final resolution of his tax liability would be forthcoming in the near future. It is obvious that petitioner was sincere in his attempted repayment, as evidenced by four years of monthly payments. He should not be denied reinstatement for the exercise of his right under the law to contest the amount of tax liability or the liens placed on his property as a result thereof.

The Review Board points out that petitioner received $100,000 in loans from S. A. Healy Company and yet has not resolved his tax liabilities. It is obvious that these loans were used by petitioner in several attempts to establish a new career in the business world. More important, such loans are to be repaid by the petitioner's $177,000 inheritance from his uncle whose estate is now in probate.

Petitioner has expressed remorse concerning his past mistakes and, we believe, is sincere in his efforts to change his former style of living. We find, therefore, that petitioner has produced sufficient evidence to prove himself rehabilitated and again fit to practice law in this State. The petition for reinstatement to the roll of attorneys is therefore granted.

*Petitioner reinstated.*